UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA                    CRIMINAL ACTION NO. 08-0360

                                            WASHINGTON,D.C.

VERSUS                                      THURSDAY, AUGUST 6, 2009

PAUL SLOUGH, ET AL                          3:00 P.M.


**INTERIM STATUS HEARING**

**BEFORE THE HONORABLE RICARDO M. URBINA**

UNITED STATES DISTRICT COURT JUDGE


<u>A P P E A R A N C E S:</u>

FOR THE PLAINTIFF,                          Kenneth C. Kohl, Esq.
                                            U.S. ATTORNEY'S OFFICE
                                            Judiciary Center Building
                                            555 4th Street, NW
                                            Room 11-850
                                            Washington, DC 20530
                                            (202) 616-2139

                                            Jonathan M. Malis, Esq.
                                            U.S. ATTORNEY'S OFFICE
                                            Judiciary Center Building
                                            555 Fourth Street, NW
                                            Room 5224
                                            Washington, DC 20530
                                            (202) 305-9665

                                            Joseph Nicholas Kaster, Esq.
                                            U.S. DEPARTMENT OF JUSTICE
                                            10th & Constitution Avenue, NW
                                            Suite 2649
                                            Washington, DC 20530
                                            (202) 514-2805

```
 1
 2                                   Michael John Dittoe,Esq.
                                     U.S. DEPARTMENT OF JUSTICE
 3                                   National Security Division
                                     10th and Constitution
 4                                   Avenue, NW
                                     1539
 5                                   Washington, DC 20530
                                     (202) 307-3804
 6
 7
 8   FOR DEFENDANT                   Mark J. Hulkower, Esq.
     PAUL A. SLOUGH                  Michael J. Baratz, Esq.
 9                                   STEPTOE & JOHNSON, L.L.P.
                                     1330 CONNECTICUT AVENUE NW
10                                   Washington, DC 20036
                                     (202) 429-6221
11
     FOR DEFENDANT                   Thomas G. Connolly, Esq.
12   NICHOLAS A. SLATTEN             Steven A. Fredley, Esq.
                                     HARRIS,WILTSHIRE & GRANNIS,
13                                   L.L.P.
                                     1200 18th Street, NW
14                                   Suite 1200
                                     Washington, DC 20036
15                                   (202) 730-1339

16   FOR DEFENDANT                   David Schertler, Esq.
     DUSTIN L. HEARD                 Danny Onorato, Esq.
17                                   Veronica R. Jennings, Esq.
                                     SCHERTLER & ONORATO, L.L.P.
18                                   601 Pennsylvania Avenue, NW
                                     North Building-9th Floor
19                                   Washington, DC 20004
                                     (202) 628-4199
20
     FOR DEFENDANT                   Steven J. McCool, Esq.
21   DONALD W. BALL                  MALLON & MCCOOL, L.L.C.
                                     1776 K Street, NW
22                                   Suite 200
                                     Washington, DC 20006
23                                   (202) 680-2440
24
25
```

```
1
2    FOR DEFENDANT                    William F. Coffield,IV, Esq.
     EVAN S. LIBERTY                  COFFIELD LAW GROUP, L.L.P.
3                                     1330 Connecticut Avenue, NW
                                      Suite 220
4                                     Washington, DC 20036
                                      (202) 429-4799
5
     REPORTED BY:                     WENDY C. RICARD, RPR, CCR
6                                     OFFICIAL COURT REPORTER
                                      333 Constitution Avenue,NW
7                                     Room #6718
                                      Washington, DC  20001
8                                     (202)354-3111

9

10   Proceedings recorded by mechanical stenography.

11   Transcript produced by computer-aided transcription.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P–R–O–C–E–E–D–I–N–G–S

1

2    THE COURT:  Good afternoon, everyone.  You're all

3    looking bright-eyed and bushy-tailed. Okay.

4    THE DEPUTY CLERK:  Matter before the Court, criminal

5    Case No. 08-360, United States of America versus Paul Alvin

6    Slough, Nicholas Abram Slatten, Evan Shawn Liberty; Dustin

7    Laurent Heard; Donald Wayne Ball; Mr.  Malis, Mr.  Kohl, Mr.

8    Dittoe, Mr.  Kaster for the government.

9    Mr.  Hulkower, Mr.  Baratz, Mr.  Connolly, Mr.

10    Fredley, Mr.  Coffield, Mr.  Schertler, Mr.  Onorato, Mr.

11    McCool representing the defendants.

12    THE COURT: Is Mr.  McCool here?

13    MR. MCCOOL:  Yes, sir.

14    THE COURT:  Oh, you came back.

15    MR. MCCOOL:  I made it back.

16    THE COURT: All right.  Gentlemen, what I would

17    intend to do now is to review the various requests for -- on a

18    bill of particulars and to make rulings with respect to those

19    issues.  Then, I will speak briefly about the matters that

20    relate to the CEPA hearings and the Kastigar and Garrity

21    issues in the hearings that will be convening on those

22    matters, and then I will give you a roster of dates that to

23    some extent conform with what the lawyers have previously

24    discussed and to the extent possible has accommodated those

25    dates, but the dates I give you are the ones I can work with

1    given my schedule and my trial commitments.

2         The defendants have filed a motion for a bill of

3    particulars, and that motion is very well crafted, and the

4    government has opposed in an equally well-crafted opposition,

5    and there's been a reply, and I've looked at the law, and I'm

6    prepared to give you my decisions on those various requests.

7         In researching the law on these matters, I'm

8    reminded -- every time I research the law on issues related to

9    a bill of particulars, I'm reminded that the precedent is not

10   very helpful.  It's all over the place.  All it really says is

11   that it is within the broad discretion of the Court.  It gives

12   you some landmarks by which the Court can guide itself, but,

13   basically, these cases, the precedent and the authority that

14   the Court and the parties may consult, are aimed at making

15   sure that the defendant is allowed to understand the charges,

16   to prepare a defense, and, perhaps, also to be protected

17   against the possibility of retrial.

18        In that vein, I am reminded of several principles,

19   some of which apply directly to the defendants' requests,and

20   I'm also reminded that a bill of particulars is not a

21   discovery device.  It's not a tool or a device for allowing

22   the defense to preview the government's theories or evidence;

23   that's not the purpose of a bill of particulars.

24        There may be a by-product of the bill of particulars

25   that gives the defense particular insights into the

1  government's case, but, as I said earlier, the main thing is

2  to insure that the defendant goes to trial without unnecessary

3  exposure to surprise, inappropriate surprise in the case, so

4  that there are no ambiguities that might create or that might

5  hamper the defendant's ability to do what he is entitled to

6  do, which is to put up a good defense.

7       The government makes some very good points in

8  speaking to the issue generally.  The government indicates

9  that a bill of particulars in its view is not necessary in

10 this case.  There's been voluminous information turned over to

11 the defense.  There are detailed factual proffers that the

12 cooperating witness, Jeremy Ridgeway, has provided abundantly

13 clear information and that the parties, the defendants, are

14 hardly in the dark about what happened that night or what the

15 government is going to claim took place when these various

16 people were killed.  In summary, the government says that the

17 factual case is discrete and straightforward and that a bill

18 of particulars is not necessary and that what the defense is

19 actually doing is going on a fishing expedition to get

20 whatever else it can by way of discovery.

21      The government specifically says that it has

22 provided the defendants with over 9,000 pages of documents,

23 including over 225 pages of death certificates and medical

24 records for the wounded victims; nearly 4,000 photographs,

25 including 71 photographs of wounded victims; and 16 digital

1    video recordings regarding the events at Nisur Square --

2    that's N-I-S-U-R.  That the defendants have also been provided

3    with 90 pages of F.B.I. laboratory results for trajectories,

4    ballistics, metallurgy, and other forensic testing, including

5    graphic displays of the trajectories of certain bullet rounds.

6    The government says that the defendants have graphic displays

7    showing the approximate locations of the victims, as well as

8    the identity and position of each defendant in the Raven 23

9    convoy.

10         Similarly, the government asserts that it has

11   already produced information for the defendants regarding

12   which firearms were discharged by the defendants and that the

13   government notes that the identity of the joint offender

14   referred to in the indictment is already known and has been

15   well known to the parties for quite some time.

16         The defense, however, makes some strong points, as

17   well.  The defense maintains that, notwithstanding the

18   disclosures, the government still has not provided what the

19   defense needs.  It hasn't provided particularized allegations

20   regarding the offending conduct of each defendant in Nisur

21   Square on September the 16th.  The defense contends that each

22   defendant therefore stands accused of extremely serious

23   conduct without any idea of whether the factual basis for the

24   charge is that he killed someone; or that he tried to kill

25   someone; or that he helped a co-defendant kill someone; or

1   perhaps that he drove a vehicle or fired a warning shot or

2   even just carried a firearm while riding along with the

3   convoy.

4           The defense asserts that a bill of particulars is

5   particularly appropriate because of the complexity of the

6   crime involving 34 alleged victims; numerous vehicles; five

7   defendants; one alleged co-actor; a significant number of

8   witnesses; and a foreign venue in a war zone; and a lack of

9   detail contained in the indictment.

10          But the defense further says that the indictment

11  hasn't really remedied anything, and, specifically, that, as

12  far as the evidence turned over so far, that 9,300 pages of

13  documents produced by the government and 1,300 pages -- that

14  of the 9,300 pages; 1,300 pages consists of the testimony of

15  General David Petraeus to the Senate Armed Services Committee;

16  2,500 pages concern the contract between Blackwater and the

17  Department of State; and 1,300 pages consist of Blackwater's

18  contract firearms directory.  The defense says that neither

19  these documents or any photographs or videos produced by the

20  government inform the defendants about the specifics and the

21  allegations with specificity each will face at trial.

22          Defendants also dispute that the government had

23  provided documents which adequately address which firearms

24  were discharged by which defendant; the defendants contend

25  that the government has not identified who fired which weapon.

1    Thus, the defendants contend that the government should be

2    ordered to respond to this request.

3          So both sides present a list of strong factors and

4    arguments that support their relative positions.  One factor,

5    however, that appears clear whichever vantage point one takes

6    in looking at the events, which are really what's central in

7    this situation, is the rather complex issues that evolve out

8    of the events themselves.

9          The complexity of the charges stem from the

10   concentrated chaos that occurred over the span of just a few

11   minutes in a foreign war zone.  Precedence make clear that the

12   fundamental inquiry is whether the defendants have sufficient

13   notice of the essential facts of the allegations levied

14   against them to prepare a defense and avoid prejudicial

15   surprise.

16         With this principle in mind, I will now review each

17   of the categories of requests.  I've blocked them into

18   categories, I think they make more sense that way:

19         The first request is for the government to provide

20   jurisdictional basis for the prosecution; that's request

21   number one.  Indeed, the defendants have noted themselves that

22   the government has produced over 2,500 pages of documents

23   concerning the contract between Blackwater Worldwide and the

24   Department of State.  Under these circumstances, the defense

25   cannot seriously maintain that they lack adequate notice of

jurisdictional information or the jurisdictional basis for the prosecution.  That request is denied.

Request number two has to do with specifics regarding each count of voluntary manslaughter and attempt to commit manslaughter.  These are couched in requests two to 29 and 35 to 74.  Request two to 29 and 35 to 74 seek specifics regarding the action taken by each defendant with respect to each count of voluntary manslaughter and attempt to commit voluntary manslaughter.  For each victim and count, there is one request seeking specifics regarding each defendants' principal liability and one request regarding aider/abettor liability.

Now the government, as I mentioned earlier, has pointed out that the indictment, the government's subsequent filings, and the Ridgeway factual proffer together provide a detailed recount of the sequence of events that allegedly occurred on September the 16th, 2007.  Indeed, the Ridgeway proffer provides a nearly minute-by-minute narrative of the events that transpired once Raven 23 entered Nisur Square on the afternoon of the September the 16th.

The factual proffer says, and I quote:  Seconds after the convoy entered the traffic circle, the Blackwater independent contractors from the third vehicle in Raven 23 convoy opened fire on a white Kia sedan that had been approaching the traffic circle from the south.

1          The proffer goes on to say that firing a machine gun

2     into the front driver's side windshield of the white Kia sedan

3     was part of the action that immediately took place and how at

4     least one other member of the convoy launched an M-203, 2-0-3,

5     grenade at the white Kia sedan.

6          Now, these would appear to be rather discrete --

7     discretely described facts cobbled together into a pretty good

8     description of what happened, but neither the Ridgeway factual

9     proffer, nor any of the other filings submitted by the

10     government in connection with this case, identifies a role

11     that each of the defendants played in the shooting.

12          In considering whether a bill of particulars is

13     required in a given case, the courts have often looked to

14     whether the defendants have been put on notice of their

15     particular role in the offending conduct.  Usually, we see

16     this in conspiracy cases where there are overt acts of people

17     doing this and people doing that, and there are various

18     defendants alleged to be involved in a conspiracy, and the

19     defense in those cases claim that they're not sure how they

20     are supposed to defend when they don't know what the

21     government is going to claim was that particular defendant's

22     role in the conspiracy and so forth.

23          This case is different.  Actually, this case, I

24     would think, is more of a prototype for the type of

25     controversy that could arise from a situation such as that

1   encompassed by the facts in this case, although, the

2   government rightly points out that a bill of particulars is

3   not required to distinguish between a principal, an aider and

4   abettor, and I agree with that and I uphold that.

5           In this case -- excuse me -- the government's

6   failure to identify each defendants' role in the shooting has

7   significance beyond the principal aider and abettor

8   distinction.  The defendants assert that after neutralizing

9   the perceived threat from the white sedan, the convoy came

10   under fire from locations in and around Nisur Square and that

11   members of the convoy engaged their attackers until such time

12   as they were able to exit Nisur Square and return to the Green

13   Zone.

14           For each defendant, the strength of his defense will

15   turn on the circumstances surrounding his actions, something

16   that he cannot be expected to explain or prepare for unless he

17   is aware of what actions he is alleged to have committed.

18           Accordingly, because the information sought in

19   requests two through 29 and 35 through 74 may necessarily be

20   of the type of importance and significance that I've already

21   described to the defenses' case, I will require that those

22   requests be met and satisfied by the government.  So the

23   defense motion as to two through 29, 35 through 74, is

24   granted.

25           The government need not specify whether each

1  defendant is being charged as a principal or aider and

2  abettor, but the government must otherwise comply with what

3  those questions seek -- must comply with the requests that

4  those questions embrace.

5       Number three, the specifics regarding statutory

6  elements; those requests are contained within 30 to 34 and 76

7  through 80.  Thirty to 34 and 76 through 80 seek specifics

8  regarding the government's allegations that each defendant

9  acted, quote, unlawfully; quote, intentionally; quote, upon

10 sudden quarrel; quote, upon heat of passion; quote, without

11 malice, in connection with the voluntary manslaughter and

12 attempted manslaughter counts.

13      The government has already made clear its

14 allegations that the defendants acted without provocation and

15 that all of the victims were unarmed civilians.  The

16 defendants' request for additional information regarding these

17 statutory elements and this request appear to be aimed at

18 discovering the government's evidence and theory of the case

19 and is, therefore, not properly subject to a bill of

20 particulars.  Accordingly, that request -- those requests are

21 denied.

22      The next request is aimed at the specifics regarding

23 the victims' wounds; that's request number 75; and the

24 firearm's count, that's request number 81.  The government

25 notes that it has already provided the defendants with

1   hundreds of pages of discovery, including photographs and

2   medical records regarding the wounded victims.  The defendants

3   have not articulated why additional information regarding

4   these requests is necessary to prevent unfair surprise at

5   trial or for the preparation of the defense.  Accordingly,

6   these requests are denied.

7        The fifth is the identity of the joint offender.  I

8   believe that point is moot since the identity of the joint

9   offender has already been disclosed.

10       There are other items which I'm about to address in

11  more summary fashion.  These items include:  Schedule for

12  pretrial motions; dates to set pursuant to prior court orders;

13  discovery cutoff; 404(b) notices by the government; and then

14  the parties have been kind enough to advance what motions the

15  Court can anticipate will be filed.  Thank you for that.  That

16  has helped me try to determine how long these hearings may

17  take and, therefore, to develop some reliable estimate.

18       I've also reviewed both 18 U.S.C. app.(Phonetic)

19  Sections 1, et seq; that is, the sections that deal with both

20  the discovery issue under CEPA, as well as the use of

21  classified information.  The parties have recognized that

22  there may well be the need to entertain these matters by way

23  of -- if they cannot come to an agreement, I hope they do --

24  but if they cannot that there will be the need to entertain

25  these matters at a hearing, and, of course, in connection with

1    that, there needs to be dates set for the filing of

2    submissions relevant to those hearings.

3            So here's the schedule I've come up with, and I have

4    it in the form of an order, and I will, of course, hand out

5    the order at the end of this proceeding, but here they are for

6    the time being:

7            Discovery motions will be filed on or before --

8    well, you've already filed the discovery motions, July 28th,

9    the motions have already been filed, and I think that not

10   everything is ripe yet.  The replies are due by August the

11   21st and oppositions are due by August the 14th; 404(b)

12   notices will be filed no later than August the 31st.

13           Pre-trial motions will be filed on or before October

14   the 16th; oppositions, thereto, by November the 6th; and

15   replies, thereto, by November the 18th.  Defendants' notice of

16   intent to use classified information will be filed by November

17   the 2nd.  The government's motion for a hearing on or before

18   November the 23rd, 2009, and notice of objections to the use

19   of classified information will be filed by November the 23rd.

20   Defendants' response on or before December the 11th, and the

21   government's reply by December the 18th.

22           We will hold a motions' hearing on December the 11th

23   at 10 a.m.  A hearing on the government's objections to the

24   defendants' use of classified material will be held on January

25   the 7th at 9:45.  I've changed the jury selection date because

1   the way I originally devised it, the jury -- it would have

2   required us to pick a jury in one day -- maybe we can do that,

3   and maybe we can't -- but, in any event, I now have jury

4   selection scheduled for January the 25th.  What's the trial

5   date -- and the trial date is February the 1st.  So that would

6   give us some time to pick the jury, take a breather, and then

7   actually start the trial.

8              All right.  Are there any questions about anything?

9              MR. KOHL:  Good afternoon, Your Honor.

10             THE COURT: Good afternoon, sir.

11             MR. KOHL:  Ken Kohl for the United States.  Those

12   dates are fine with the government.  With respect to -- we

13   have a pretrial conference already set by the Court on January

14   the 14th; is that right, still?  That would still be set for

15   10 a.m. on the 14th.

16             And by our calculation, the defense counsel and

17   government had agreed -- and I think in our joint status

18   report, we had indicated our pretrial statement would then be

19   filed January 2nd if that's all right with the Court?

20             THE COURT: Yes, sir.

21             MR. CONNOLLY:   Your Honor, good afternoon.

22             THE COURT:  Good afternoon.

23             MR. CONNOLLY:  Tom Connolly on behalf of Mr.

24   Slatten.  I'm speaking on behalf of everybody just on the

25   scheduling.

1          THE COURT: All right.

2          MR. CONNOLLY:  It may be a failure of my hearing,

3    but I did not hear the Court set out a motions hearing date

4    for the discovery motions, for the motion to compel Brady and

5    the motion to compel Rule 16.  And, again, I was writing down

6    so quickly, I may just not have caught it.

7          THE COURT:  I mentioned the general motion's hearing

8    date of December the 11th at 10 a.m.

9          MR. CONNOLLY:  Right.  Your Honor, I'm wondering if

10   I could take 30 seconds to convince you to give us an earlier

11   date on the motions to compel discovery and Brady?  We have a

12   situation where we believe that there is substantial discovery

13   that the government has not provided us that they are required

14   to provide, either under Brady or under Rule 16.

15          We have met and conferred a lot on this issue, and

16   we just do not have a meeting of the minds, but my concern is

17   if we have a hearing or we don't have resolution to that until

18   December, and we're actually successful in convincing you that

19   that discovery is owed to us, we have very, very little time

20   to go make use of that.

21          Because as the Court is well aware, most of the

22   evidence and most of the witnesses in this matter are

23   scattered throughout the world, many in Iraq, some in

24   Afghanistan, and others around the world.

25          I just had an experience in this case where it took

1   me about two-and-a-half months to find an active military

2   officer to speak to him about a matter of some relevance.  So

3   my concern is if the Court would rule in our favor and not

4   until a December time frame, we're going to have a matter of

5   weeks to try to track down witnesses across the world.

6           So I would just encourage the Court if we could, if

7   it works with the Court's schedule, to have a hearing, or if

8   not a hearing, a resolution of the discovery matters, some

9   time in early September or mid-September.

10          THE COURT: All right.

11          MR. KOHL:  Your Honor, the Court's -- the schedule

12  the Court suggested still leaves the defense a month-and-a-

13  half after the hearing if there is any -- if there is any

14  ruling in the defenses' favor with respect to certain

15  discovery requests.

16          The discovery requests concern a finite number of

17  requests that there's disagreement about, but we defer to the

18  Court if the Court would prefer to set an earlier date.

19          THE COURT: All right.  But do you -- without saying

20  that you're going to turn it over without a fight, I mean do

21  you have everything you need to turn over if they win this

22  part of the dispute?

23          MR. KOHL:  Well, on those, I would say some of the

24  requests that they made, you'll see -- and you'll see in our

25  opposition that we'll file next week -- are very broad.

1    They're literally asking for every document that DoD has that

2    relates to insurgent or terrorist attempts to attack or kill

3    or harm U.S. persons anywhere in the world.  I mean it is a

4    very broad request that's just unrealistic.

5              I mean if the Court were to -- obviously, in that

6    instance -- agree with the government -- agree with the

7    defense, we would need months in order to respond to some of

8    these requests just because they're so -- we, obviously, think

9    -- unreasonable.

10             THE COURT: Well, so wouldn't it be in both sides

11   interest to have this issue resolved sooner rather than later?

12             MR. KOHL:  Either way, we're going to comply with

13   the Court's deadlines no matter what, so --

14             THE COURT: All right, then.  Thank you.  So what

15   kind of a time frame and what step-by-step procedure are you

16   recommending in light of this dispute, which I wasn't aware

17   of?

18             MR. CONNOLLY:  Judge, I think they have an

19   opposition to our -- to two motions due some time next week.

20   We would forgo a reply to that opposition if we could get a

21   resolution from the Court early; either a hearing where we

22   could actually go through these issues or even on the brief,

23   but this matter is so important -- and I do think at the end

24   of these hearings, there are going to be substantial swaths of

25   discovery materials that the Court is going to find we're

1    entitled to.

2            And so I just -- we're amenable to anything that the

3    Court is amenable to in terms of trying to resolve this issue

4    as quickly as we can.  We, obviously, think the government

5    should have an opportunity to file their oppositions to be

6    heard in writing, but if we could shortly thereafter bring

7    this to a head, that would be --

8            THE COURT: So this issue will be ripe by August the

9    21st?

10           MR. CONNOLLY:  Yes, sir.  Your Honor, I don't mean

11   to interrupt the Court in talking with co-counsel here, if

12   we're provided a reply to their opposition within five days,

13   we would waive any hearing on the matter and just have the

14   Court issue a ruling on the papers if that would make this

15   issue be resolved quickly.

16           THE COURT: Let me see where I can squeeze this in

17   because I'm in one trial after the other, and then you all can

18   tell me whether you would, given that time table, prefer to go

19   the way you just mentioned or if you want the Court to give

20   its rulings in open court.

21           MR. CONNOLLY:  Thank you.

22           THE COURT:  All right.  Hold on a second.

23           (Whereupon, Judge Urbina conferred briefly with his

24   staff at this time.)

25           THE COURT:  All right.  We have a date available

1   which is Monday, September the 14th, at 2:00 p.m.; agreeable?

2           MR. KOHL:  That's good for the government.  We would

3   note there are -- the prosecutor has just met with the F.B.I.

4   Lab yesterday, and we're putting as much pressure on them to

5   get any remaining examinations done as soon as possible.

6           We just came back from Iraq in June.  There was an

7   additional car that was recovered.  There was additional

8   forensics that was recovered; additional ballistics.  All that

9   is being analyzed, and we're working to get this all completed

10  as quickly as we can.

11          I think we should have the bulk of this turned over

12  and we were asking for -- we're shooting for the end of

13  September.  There may be -- if we appear before the Court on

14  September 14th, there may be some items that we don't have,

15  that we are just unable to turn over at that point, but we'll

16  at least have the issues defined in terms of the briefing on

17  this.

18          So I just would like to alert the Court by moving

19  the date of this hearing up to mid-September, there may be

20  certain items that we just don't have completed at that point.

21          THE COURT: Well, if I rule at that hearing that you

22  don't have to turn it over, there's no problem.  If I rule

23  that you do, then at least you'll be on notice that as soon as

24  you get it you have to turn it over.

25          MR. KOHL:  We'll come up with a date, exactly.

```
 1              THE COURT: Certainly by the end of September.

 2              MR. KOHL:  That's fine with the government, Your

 3    Honor.

 4              MR. CONNOLLY:  Your Honor, we're agreeable to that

 5    approach.  I don't -- Mr. Kohl is talking about a discovery

 6    cutoff, which I think there should be a discovery cutoff in

 7    this case, but we're actually talking about issues that we

 8    briefed and we've come to a head.  We just don't agree on

 9    whether they -- they have it -- whether we're entitled to it

10    or not, so I don't think --

11              THE COURT: Are you aware of this evidence that --

12              MR. CONNOLLY:  I'm aware that there is some

13    additional testing going on in the F.B.I., and I understand as

14    a former prosecutor that sometimes the F.B.I. doesn't move as

15    quickly as people want them to move, but I think at some

16    point, we have to have a cutoff date for discovery, you know,

17    we know that we're entitled and have received everything by

18    that time, so that we can now focus our attention to doing the

19    diligent work of investigating the discovery we have which

20    includes, in all likelihood, having to go to Iraq and meet

21    witnesses.

22              THE COURT: All right.  What about September the 30th

23    as a cutoff date?

24              MR. KOHL:  Well, Your Honor, I would ask that the

25    Court just hold this request in abeyance until September 14th.
```

1   We'll know -- we'll be better informed at that point exactly

2   where things stand.  There are --

3            THE COURT: Well, let me put you on notice then.

4   I'll do as you're requesting right now, which is to hold this

5   in abeyance, but I can tell you that I understand how long it

6   takes for the government to prepare its case, and in order to

7   give you guys enough time to do what you need to do, we can't

8   compress it approaching the end of the year.

9            MR. KOHL:  Right.  No.  No.

10            THE COURT:  So my inclination will be -- and this is

11   my inclination based on common sense and it's subject to

12   whatever you guys turn up at the hearing -- is to have the

13   cutoff at the end of that month, September the 30th.

14            MR. KOHL:  Right.  We're working to that end.  We'll

15   have much more precise information by the 14th.

16            THE COURT:  All right.  Well, the government has

17   been working on this case for a long time now, so I can't

18   imagine that you'd be rushing to do something at the last

19   minute when you've known exactly what's going on for quite

20   some time now.

21            MR. KOHL:  And I do want to point out that we're

22   talking  about supplemental evidence, examinations, that are

23   being done.  Especially as the Court now is -- with the

24   Court's ruling on the bill of particulars.  I'll tell you,

25   some of the additional analysis we're requesting in terms of

1    metallurgy and some of the firearms work that can be done with

2    the bullet fragments that have been recovered from each of the

3    cars will better inform us in terms of which weapon fired

4    those rounds because of the type of ammunition that was used

5    by each of those weapons.

6            So I think it will meet some of the requests that

7    the defense has made under their motion for bill of

8    particulars and the Court's orders.  So we're working full

9    throttle on all of these things.  I'll tell you that there's

10   been -- there's no stack of evidence sitting in our file

11   cabinet or examination report sitting in our file cabinet that

12   we haven't turned over.  We've turned over 90 pages worth of

13   reports and trajectory analysis and that sort of the thing.

14           There is just some additional supplemental work

15   being done that I think will be helpful on a number of issues.

16   So -- and we're going to work towards September 30th as our

17   completion date.

18           THE COURT: All right.  We'll cross that bridge when

19   we get to it.

20           MR. CONNOLLY:  I don't believe we have anything else

21   from the defense.  We have some outstanding issues on the

22   Kastigar discovery issues with the Kastigar team, but we've

23   been working diligently, and I don't expect to need the Court

24   intervention.

25           THE COURT: When I came on the bench this afternoon,

1    I said, good afternoon, gentlemen.  I did not see that there

2    was a lady at the --

3            MS. JENNINGS:  Good after, Your Honor.

4            THE COURT:  -- so excuse me for doing that.  All

5    right.

6            MR. HULKOWER  Your Honor, one thing Mr.  Malis

7    mentioned to me as we were coming in that I didn't brief Mr.

8    Connolly, so I'm sort of the tag along here.  We received

9    within the last 10 days some information about 20-some <u>Brady</u>

10   witnesses, many in Iraq, and I'm not complaining about the

11   timing of that now.  It's mentioned in our motion.  The point

12   Mr.  Malis wanted me to raise is that we put them on notice

13   immediately after receiving that information, since most of

14   these people are in Iraq or elsewhere, that we would want to

15   take Rule 15 depositions in order to preserve the testimony

16   for trial if these people are unwilling to come to the United

17   States, and Mr.  Malis understands that.  He hasn't indicated

18   any objection.  There are some bases we have to touch before

19   we file the motion.

20           And as I say, we got the names of these people 10

21   days or so ago; in the last couple of days, we've gotten the

22   contact information.  It's not necessarily up-to-date contact

23   information, but we're going to diligently attempt to track

24   these people down, find out about availability, and then

25   discuss with the government taking Rule 15 depositions.

1        THE COURT: Do you have their whereabouts?

2        MR. HULKOWER:  We have last known whereabouts.  Many

3   of these people are contractors for companies other than

4   Blackwater that have versions of the events that are starkly

5   different than that in the indictment.  We would have to track

6   them down with their current companies.  Many of these are for

7   Iraqis.  We have, again, last known contact information.

8        We're hopeful that many of them will be where they

9   were last.  We're going to work on it aggressively, and we're

10  going to keep in touch with the government on that, and the

11  subsidiary issue for that is for Rule 15 depositions and for

12  an attempt to put an investigator on the ground to conduct

13  interviews in some of these foreign locales.  We've asked the

14  government for assistance in providing security that is

15  consistent with the security they had when they went over.

16       We don't want to expose our self or investigators to

17  any greater dangers than they were exposed to when they were

18  over there, and we haven't, again, gotten any objections in

19  concept.  I can't tell you how it is all going to play out,

20  but we do want the Court to know that we are diligently

21  pursuing this and that we anticipate a realistic possibility

22  of Rule 15 deposition motions as early as we can get the

23  information necessary to establish the predicate.

24       THE COURT: Well, I'm not going anywhere.  I'll be

25  around to entertain such a motion, and I know Mr.  Malis is as

1   concerned as anyone about your safety and the safety of your

2   agents.  I've been very impressed the way you all work

3   together.  That's very good.  All right.  Thank you.

4           MR. KOHL:  Thank you, Your Honor.

5           MR. CONNOLLY:  Thank you, Your Honor.

6           MR. HULKOWER:  Thank you, Your Honor.

7           THE DEPUTY CLERK:  All rise.  This Honorable Court

8   stands in recess until further notice.

9                   [End of proceedings]

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    C E R T I F I C A T E

4            I, Wendy C. Ricard, Official United States Court

5     Reporter in and for the District of Columbia, do hereby

6     certify that the foregoing proceedings were taken down by

7     me in shorthand at the time and place aforesaid,

8     transcribed under my personal direction and supervision,

9     and that the preceding pages represent a true and correct

10    transcription, to the best of my ability and

11    understanding.

12

13

14

15                              _____

16                              Wendy C. Ricard, RPR, CCR

17                              Official U.S. Court Reporter

18

19

20

21

22

23

24

25