UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
UNITED STATES OF AMERICA      )
                              )
   v.                         )   Criminal No. 08-360 (RCL)
                              )
PAUL A. SLOUGH,               )
EVAN S. LIBERTY, and          )
DUSTIN L. HEARD,              )
                              )
   Defendants.                )
                              )

UNITED STATES OF AMERICA      )
                              )
   v.                         )   Criminal No. 14-107 (RCL)
                              )
NICHOLAS A. SLATTEN,          )
                              )
   Defendant.                 )
```

## MEMORANDUM OPINION

Before the Court are the defendants' motions [*Slough* 441, 447; *Slatten* 17] to exclude evidence detailed in the government's notice [*Slough* 406] of intention to introduce evidence under Federal Rule of Evidence 404(b) ("Rule 404(b)"). Upon consideration of the defendants' motions [*Slough* 441, 447; *Slatten* 17], the government's opposition [*Slough* 481; *Slatten* 36], the defendants' replies [*Slough* 492, 494; *Slatten* 41], the applicable law, and the entire record herein, the Court will DENY in part and GRANT in part the defendants' motions to exclude.

I. BACKGROUND

Both the District Court and the Court of Appeals for the District of Columbia Circuit have previously described the factual background of this case. *United States v. Slough*, 677 F. Supp. 2d 112, 116–129 (D.D.C. 2009) ("*Slough I*"), *vacated*, 641 F.3d 544, 555 (D.C. Cir. 2011)

("*Slough II*"); *Slough II*, 641 F.3d at 547–49. Thus, the Court will now only highlight the relevant facts and procedural background.

On March 28, 2014, the government filed a notice of its intention to introduce at trial evidence pursuant to Rule 404(b) related to defendants Evan Liberty, Nicholas Slatten, and Paul Slough. *United States v. Slough*, 08 Cr. 360, ECF No. 406. In its notice, the government listed the following purported evidence, summarized for the purposes of this Memorandum:

Evan Liberty

1. On or about both May 23, 2007, and September 9, 2007, Liberty indiscriminately fired an automatic weapon from a Blackwater armored vehicle.

2. "As a result of his overly aggressive behavior, Liberty was reassigned from a position in the turret, to a driver within the convoy."

Nicholas Slatten

1. Within the twelve months preceding the Nisur Square shooting incident, Slatten "made statements that he wanted to kill as many Iraqis as he could as 'payback for 9/11,' and he repeatedly boasted about the number of Iraqis he had shot." After a September 9, 2007, shooting incident, Slatten "bragged that he had turned 'one guy's head into a canoe'" and that "he had gotten a couple of 'kills today with my rifle.'"

2. Within the twelve months preceding the Nisur Square shooting incident, Slatten "deliberately fired his weapon to draw out return fire and instigate gun battles in a manner that was inconsistent with the use of force and escalation of force policies that governed Blackwater personnel in Iraq." The government alleges that such intentional shooting included two specific instances when there were no perceivable threats to Blackwater security personnel. The government further alleges that Slatten "chastised" another Raven 23 member for refusing to fire into a tin shed when that member "saw no threat."

Paul Slough

1. During one day in the months preceding the Nisur Square shooting incident, Slough, on two separate occasions, indiscriminately fired an automatic weapon from a Blackwater armored vehicle when there was no perceivable threat to Blackwater security personnel. "On another occasion, Slough fired an M203 round, for no apparent reason, close enough to his Blackwater convoy as to pose a danger of getting hit by shrapnel."

2

*Slough*, ECF No. 406 at 6-9.

Defendants moved to exclude this evidence on May 16, 2014. *Slough*, ECF Nos. 441 & 447. Three days later, the government filed a supplemental notice of intention to introduce evidence pursuant to Rule 404(b). *Slough*, May 19, 2014, ECF No. 450. In its supplemental notice, the government added the following purported evidence to its original list, *Slough*, ECF No. 406, summarized for the purposes of this Memorandum:

Evan Liberty

1. Following a shooting confrontation that occurred within the twelve months preceding the Nisur Square shooting incident, "it was discovered that Liberty had fired every magazine in his bag—25 to 30 magazines." After a Blackwater teammate questioned Liberty's decision to use all of his ammunition during the shootout, "Liberty ridiculed that teammate for only firing at targets, and stated 'just shoot at something man.'" Liberty also "referred to this teammate as a 'Hadji Lover.'"

Nicholas Slatten

1. "After an incident in May of 2007, Slatten was bragging about the number of rounds he had fired that day. He said he had fired all of his rounds. He was also talking about engaging people running across the street."

*Slough*, ECF No. 450 at 1-2.

The government also noted in its opposition brief that it

> plans to introduce evidence that during the twelve months preceding the shooting at Nisur Square, defendants Slough, Slatten and Liberty routinely threw water bottles and other items at unarmed civilians, vehicles, wagons, and bicycles without justification in an attempt to break automobile windows, injure and harass people, and for sport. For example, in an FBI 302 recently disclosed to the current trial team, a Raven 23 member described an incident in which a lady sweeping the street stopped and waved at the convoy, pleading for water. Defendant Liberty threw a frozen bottle at the woman with such great force that it knocked the cap off of the bottle.

Opp'n at 7.

3

## II. LEGAL STANDARD

This Memorandum will focus only on admissibility under Rule 404(b). The overriding thrust of the defendants' motion is exclusion pursuant to Rule 404(b), and this Court's ensuing decision on the motions does not require analysis of whether the evidence in question is "intrinsic to the charged crime"—a determination that would make a Rule 404(b) analysis unnecessary. *See United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000).[1]

Pursuant to Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.... This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)-(2). "Under the law of this circuit, '404(b) is a rule of inclusion rather than exclusion,' . . . and it is 'quite permissive,' excluding evidence only if it is offered for the sole purpose of proving that a person's actions conformed to his or her character." *United States v. Long*, 328 F.3d 655, 660-61 (D.C. Cir. 2003) (quoting *Bowie*, 232 F.3d at 929-30 (D.C. Cir. 2000)).

The Circuit applies a "two-step analysis in considering whether [Rule 404(b)] evidence [is] properly admitted." *United States v. Clarke*, 24 F.3d 257, 264 (D.C. Cir. 1994). "The first step requires only that the evidence be probative of some material issue other than character." *United States v. Washington*, 969 F.2d 1073, 1080 (D.C. Cir. 1992) (citing *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990)). If so, the Court must then determine whether, under Federal Rule of Evidence 403 ("Rule 403"), "the probative value [of the evidence] is substantially outweighed by the danger of unfair prejudice . . . ." *United States v. Manner*, 887

---

[1] Indeed, in *Bowie*, the Circuit held that, while the evidence at issue was not "intrinsic" and, thus, did not fall outside the scope of Rule 404(b), the evidence was admissible pursuant to Rule 404(b). 232 F.3d at 929.

4

F.2d 317, 321 (D.C. Cir. 1989) (quoting Fed. R. Evid. 403); *cf. United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002) (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "'[u]nfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'"). According to the advisory committee's note to Rule 403, "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note; *see also United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013); *United States v. Libby*, 453 F. Supp. 2d 35, 44 n.8 (D.D.C. 2006).[2]

Rule 404(b) evidence "must meet a threshold level of similarity in order to be admissible to prove intent," but "exact congruence" is not required. *United States v. Long*, 328 F.3d 655, 661 (D.C. Cir. 2003); *see also* Slough Mot. at 5; Slatten Mot. at 8; Liberty Mot. at 8. "What matters is that the evidence be relevant to show a pattern of operation that would suggest intent and that tends to undermine the defendant's innocent explanation." *Long*, 328 F.3d at 661 (internal quotation marks and citation omitted); *see also* Slough Mot. at 5; Opp'n at 15. "[I]n order to determine a 'close' relationship or sufficient 'similarity,' the reviewing court is to

---

[2] *See also Huddleston v. United States*, 485 U.S. 681, 687-88 (1988), which placed Rule 404(b) within the general context of relevance under Article IV of the Federal Rules of Evidence:

> Rules 401 and 402 establish the broad principle that relevant evidence—evidence that makes the existence of any fact at issue more or less probable—is admissible unless the Rules provide otherwise. Rule 403 allows the trial judge to exclude relevant evidence if, among other things, "its probative value is substantially outweighed by the danger of unfair prejudice." Rules 404 through 412 address specific types of evidence that have generated problems. Generally, these latter Rules do not flatly prohibit the introduction of such evidence but instead limit the purpose for which it may be introduced. Rule 404(b), for example, protects against the introduction of extrinsic act evidence when that evidence is offered solely to prove character. The text contains no intimation, however, that any preliminary showing is necessary before such evidence may be introduced for a proper purpose. If offered for such a proper purpose, the evidence is subject only to general strictures limiting admissibility such as Rules 402 and 403.

5

consider—in part—temporal proximity." *United States v. Turner*, 2006 WL 1980232, at *5 (D.D.C. July 12, 2006) (citing *Jankins v. TDC Mgmt. Corp., Inc.*, 21 F.3d 436, 441 (D.C. Cir. 1994)). "'[T]he admissible bad acts evidence need not show incidents identical to the events charged, so long as they are closely related to the offense,' . . . and are probative of intent rather than mere propensity." *Long*, 328 F.3d at 661 (quoting *United States v. DeLoach*, 654 F.2d 763, 769 (D.C. Cir. 1980)); *see also* Liberty Mot. at 8; Opp'n at 15.

## III. ANALYSIS

The defendants' intent is at issue—and in dispute—with regard to each of the charged offenses: murder in the first degree, voluntary manslaughter, and attempted voluntary manslaughter. While the degree and type of intent varies per charge, aspects of the defendants' state of mind, both preceding and at the moment of the Nisur Square shooting incident, will be directly relevant to a finding of guilt or innocence. As the Supreme Court has explained, Rule 404(b) evidence "may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston*, 485 U.S. at 685 (1988). Here, the Court will evaluate the government's purported Rule 404(b) evidence for its probative value as to the requisite intent[3] for the charged homicides.[4]

---

[3] For Rule 404(b) purposes, evidence that is probative of an *intent to kill* shall satisfy the standard of admissibility for both first-degree murder and voluntary manslaughter. Notwithstanding the government's elevated burden of proof for defendant Slatten's first-degree murder charge, evidence indicative of an intent to kill Iraqi civilians would be sufficiently probative of an issue other than character that is material to both first-degree murder and voluntary manslaughter. *See Washington*, 969 F.2d at 1080 (noting that the "first step [of Rule 404(b) analysis] requires only that the evidence be probative of some material issue other than character."); *see also* Defs.'s and Gov't's Proposed Jury Instructions, *Slough*, May 16, 2014, ECF Nos. 443 at 28, 37 & 448 at 14-15, 20 (intent to kill is a material issue for both homicide charges).

[4] The Court agrees with the government that motive is closely linked to intent, especially in the context of homicide. Opp'n at 13-15. The Court is unpersuaded that "demonstrating 'motivation' [is not] a proper basis on which to permit the introduction of prior acts in this case." Slatten Mot. at 7-8. Indeed, the case the defense cites for support—*United States v. Brown*, 880 F.2d 1012 (9th Cir. 1989)—further stated that Rule 404(b) evidence "is allowed to show motive only when motive is in turn relevant to establish an element of the offense that is a material

6

Given the thematic connections among the government's purported Rule 404(b) evidence, the Court's analysis can be divided into four categories: indiscriminate shooting, throwing water bottles and other items, statements by the defendants, and Evan Liberty's reassignment.[5]

*A.  Indiscriminate shooting*

The government claims it possesses evidence that defendants Slatten, Slough, and Liberty all, on separate and multiple occasions, fired their weapons indiscriminately, without perceivable threats to their safety. *Slough*, ECF No. 406 at ¶¶ b, c, d, f; *Slough*, ECF No. 450 at 1-2 (Liberty). The defendants argue, in essence, that the alleged indiscriminate shooting instances are unconnected to and factually dissimilar from the Nisur Square shooting incident. Slough Mot. at 4-6; Liberty Mot. at 7-9; Slatten Mot. at 8-10. The government counters that "incidents relating to prior indiscriminate shooting of weapons, without regard for who might be struck by the rounds, would be . . . evidence of the defendants' hostility towards Iraqis, evidence directly linked to defendants' states of mind" on the day of the shooting incident at issue in this case. *See* Opp'n at 12. The Court agrees with the government that intentional indiscriminate shooting by the defendants would evince a mentality of hostility toward and lack of respect for the lives of Iraqi civilians that is probative of the issue of intent for both first-degree murder and voluntary

---

issue." *Id.* at 1014. Like in *Brown*, the defendants' intent to kill is in dispute here. *Id.* at 1015. Unlike in *Brown*, a motive to kill the alleged victims in this case *could* be derived from asserted prior violent acts directed toward and statements regarding Iraqi civilians, and does not merely show a propensity for violence. *See id.* Nevertheless, this Memorandum will concentrate solely on whether the purported Rule 404(b) evidence is admissible to prove intent, putting the issue of motive aside, since the categories of evidence listed below are either sufficiently linked to the material issue of intent or wholly insufficient to satisfy Rule 404(b).

[5] The government's supplemental notice of intention to introduce evidence pursuant to Rule 404(b), *Slough*, ECF No. 450, presents evidence that is substantially similar in kind to the evidence presented in the original notice, *Slough*, ECF No. 406. Likewise, the government's claim regarding the throwing of water bottles and other items at Iraqi civilians, which it presented for the first time in its opposition brief, Opp'n at 7, is substantially similar in character to the alleged evidence of injurious conduct in the original notice. As such, the Court will permit consideration of this additional purported evidence, despite the fact that the government filed its supplemental notice and opposition brief after the defendants had filed their respective motions to exclude.

7

manslaughter. Specifically as to Slatten's first-degree murder charge, examples of recent indiscriminate, yet deliberate, shooting are not evidence of character, but potential evidence of Slatten's state of mind leading up to the day of the Nisur Square shooting incident. A reasonable juror could deem an eagerness to fire one's deadly weapon into populated areas, without provocation, as evidence of malice aforethought. Moreover, a reasonable juror could surely conclude that the intent of indiscriminate shooting with no present threat would be to kill or, at least, seriously injure Iraqi civilians—*i.e.* the type of intentionality at issue in a charge of voluntary manslaughter. Regarding factual similarities to the Nisur Square shooting incident, allegations that Slatten deliberately and intentionally shot at unidentified targets while unprovoked are factually consistent with his current indictment for first-degree murder. *See Long*, 328 F.3d at 661. The same factual similarity certainly exists between instances of indiscriminate shooting of weapons designed to kill or seriously injure by defendants Liberty and Slough and their respective indictments for multiple counts of voluntary manslaughter.

The defendants further claim that the government's purported Rule 404(b) evidence is inadmissible pursuant to Rule 403 because "it would be substantially outweighed by its unfair prejudice." *See, e.g.*, Slough Mot. at 7. The principal Rule 403 argument raised by the defendants is that the government's Rule 404(b) evidence centers on a presentation of the defendants' "ethnic or racial animus" toward Iraqis, and that such a presentation would "overwhelm legitimate evidence." *See* Slough Mot. at 7-8; *see also*; Slatten Mot. at 12-13; Liberty Reply at 4.[6] To support this argument, each defendant cites *United States v. Doe*, 903

---

[6] The defendants also argue that the introduction of such evidence would waste the Court's and jury's time. Slough Mot. at 8; Liberty Mot. at 11; Slatten Mot. at 14. Yet as defendants effectively admit, introducing such evidence would result in undue delay only if the Court accepts that the evidence is not probative. Since the Court finds that evidence of indiscriminate shooting, throwing water bottles and other objects at Iraqi civilians, and the defendants' own statements would be probative of intent, the defendants' undue delay argument is of no moment here.

F.2d 16 (D.C. Cir. 1990). Slough Mot. at 7-8; Slatten Mot. at 12; Liberty Reply at 4. In *Doe*, the Circuit "condemned racially inflammatory remarks during governmental summation." *Doe*, 903 F.2d at 24-28. Yet a prosecutor's racially biased remarks during closing arguments are quite distinguishable from a defendant's conduct. Here, it cannot be said that evidence probative of the defendants' intent to commit the charged crimes—an issue that will be material to the prosecution—will "violently affect a juror's impartiality." *Id.* at 28 (internal quotation marks and citation omitted). To the contrary, such relevant state of mind evidence may, in fact, be "the only means of ascertaining that mental state." *Huddleston*, 485 U.S. at 685. Thus, evidence of indiscriminate shooting is permissible under Rule 404(b).

*B.     Throwing water bottles and other items*

While frozen water bottles were not used to kill and injure Iraqis in Nisur Square on September 16, 2007, the purported evidence of defendants throwing hardened objects at "unarmed civilians, vehicles, wagons, and bicycles without justification in an attempt to break automobile windows, injure and harass people, and for sport," Opp'n at 7, is also sufficiently probative of intent. Such conduct, if true, would reveal hostility toward and disregard for the well-being of Iraqi civilians similar to that demonstrated by indiscriminate shooting. Therefore, like evidence of indiscriminate shooting, evidence that the defendants would throw objects in a manner that exceeded acceptable force by Blackwater security personnel is permissible under Rule 404(b).

*C.     Statements by the defendants*

Perhaps the clearest examples of permissible 404(b) evidence are the alleged statements made by defendants Liberty and Slatten that suggest a manifest animosity toward Iraqis. The government alleges that Slatten, within a year of the Nisur Square shooting incident, "made

9

statements that he wanted to kill as many Iraqis as he could as 'payback for 9/11.'" *Slough*, ECF No. 406 at ¶ a. In addition, the government seeks to introduce evidence of Slatten bragging about firing his weapon at and killing Iraqis. *Id.* at ¶¶ a, d; *Slough*, ECF No. 450 at 2-3.[7] Taken together, statements as violent and specifically hostile as those alleged would undoubtedly be probative of an intent to kill, with malice aforethought, the Iraqi civilian driving a white Kia in Nisur Square on September 16, 2007. *See* Indictment, *United States v. Slatten*, 14 Cr. 107, ECF No. 1 at 2. The government also alleges that, after a shooting confrontation in the year preceding the Nisur Square incident, Liberty "ridiculed [a] teammate for only firing at targets, and stated 'just shoot at something man.'" *Slough*, ECF 450 at 1-2. The government claims to be in possession of evidence that "Liberty referred to this teammate as a 'Hadji Lover,'" *id.*, which would imply enmity toward Arab people generally. Such statements, made by a defendant charged with voluntary manslaughter and reflective of an intent to kill Iraqis, regardless of any threat they posed, are probative here.

Once again, the defendants' arguments regarding the prejudicial effect, under Rule 403, of statements of animosity toward Iraqis are unavailing. The government has provided notice that it has witnesses who will testify to the defendants' own statements expressing either outright hostility toward Iraqis or a disregard for their lives. Presenting such statements to the jury would not "lure the factfinder into declaring guilt on an improper basis rather than on proof specific to the offense charged," given the direct relevance of such statements—allegedly spoken by the defendants—to the issue of intent underlying both first-degree murder and involuntary

---

[7] The government further notes that it has evidence of "substantially similar statements made by Slatten along these lines (and included in previously provided discovery)," including: "statements that he did not like Iraqi civilians or Muslims in general; that he did not trust them; that he did not think Iraqi lives were 'worth anything,' that 'They are not even humans. They are animals.'" Opp'n at 6.

manslaughter. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997).[8]

### D. Evan Liberty's reassignment

Finally, the government provided notice of its intention to introduce evidence that, "[a]s a result of his overly aggressive behavior, [defendant] Liberty was reassigned from a position in the turret, to a driver within the convoy." *Slough*, ECF No. 406 at ¶ e. Rather than presenting evidence of a defendant's conduct or statements that are probative of intent, the government wishes to submit evidence of a third party's presumed *response* to a defendant's conduct or statements. Such evidence bears too attenuated a link to the elements of the present charges against Liberty to be admissible. Thus, the Court GRANTS defendant Liberty's motion to exclude evidence of his reassignment.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES in part and GRANTS in part the defendants' motions [*Slough* 441, 447; *Slatten* 17] to exclude the evidence described in the government's notice [*Slough* 406] of intention to introduce evidence pursuant to Rule 404(b).

A separate Order consistent with this Memorandum Opinion shall issue this date.

4/11/14
Date

ROYCE C. LAMBERTH
United States District Judge

---

[8] The Court also notes that these statements allegedly made by defendants Liberty and Slatten to witnesses would be admissible pursuant to Federal Rule of Evidence 801(d)(2)(A) ("Rule 801")—the rule governing an opposing party's statements. The provision reads, in relevant part: "A statement that meets the following conditions is not hearsay: . . . The statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity." Such statements by Liberty and Slatten, describing their hostility and violent acts toward Iraqis, could very well be offered against those defendants as to the element of intent required for the currently charged crimes.

11