UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 08-360 (RCL) |
| | ) | |
| PAUL A. SLOUGH, | ) | |
| EVAN S. LIBERTY, and | ) | |
| DUSTIN L. HEARD, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 14-107 (RCL) |
| | ) | |
| NICHOLAS A. SLATTEN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the Court is the government's motion [444] to exclude the expert testimony of various defense experts. Upon consideration of the government's motion, the defendants' opposition [473], the government's reply to that opposition [497], oral argument held on May 29, 2014, the applicable law, and the entire record herein, the Court will GRANT in part, DEFER in part, and DENY in part the government's motion to exclude defendants' expert testimony.

**I.    BACKGROUND**

Both the District Court and the Court of Appeals for the District of Columbia Circuit have previously described the factual background of this case. *United States v. Slough*, 677 F. Supp. 2d 112, 116–129 (D.D.C. 2009) ("*Slough I*"), *vacated*, 641 F.3d 544, 555 (D.C. Cir. 2011)

("*Slough II*"); *Slough II*, 641 F.3d at 547–49. Thus, the Court will now only highlight the relevant facts and procedural background.

On April 25, 2014, the defendants sent letters to the government, as required by Rule 16(b)(1)(c) of the Federal Rules of Criminal Procedure ("Rule 16"), notifying the government of their intent to call ten different expert witnesses in the upcoming trial in this matter,. Gov't.'s Mot. at 1. On May 16, 2014, the government timely filed the instant motion, which asks this Court to exclude the testimony of nine of those witnesses: Urey Patrick; Col. David Bolgiano; William Conrad; William Tobin; Dr. Frederick Schmidt; Don Mikko; Michael Haag; Dr. Michael Baden; and Dr. Henry Lee. *See generally* Gov't.'s Mot. The government first states that the testimony of Mr. Patrick and Col. Bolgiano should not be admitted under Rule 702 of the Federal Rules of Evidence ("Rule 702") and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993), alleging that those two witnesses lack the requisite qualifications for the Court to accept their opinions as expert testimony and because their opinions do not meet the relevance standard of *Daubert* and Rule 702. Gov't.'s Mot. at 4-15. Additionally, the government states that, for each of the nine above-mentioned witnesses, the defendants did not provide adequate summaries of the expert testimony under Rule 16, and that this Court should exclude the testimony on those grounds. *See generally* Gov't's Mot.

## II. LEGAL STANDARD

Rule 702 governs admissibility of expert testimony at trial. It states that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, training, or education may testify in the form of an opinion or otherwise if:"

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under Rule 702, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) clarified that *Daubert* could cover all expert testimony, not just science-based testimony. Thus Rule 702 imposes upon trial judges a two-pronged test: they must ensure that all expert testimony is (1) reliable (meaning the expert is qualified to issue the opinion and the opinion itself has an acceptable basis) and (2) relevant (meaning it will help the trier of fact understand evidence or determine disputed facts). *See generally Daubert*, 509 U.S. 579.

Under Rule 16, defendants must, at the government's request, provide "a written summary of any testimony that the defendant intends to use under [Rule 702] .... This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C). Failure to comply with Rule 16 may result in a court refusing to admit the testimony. Fed. R. Crim. P. 16(d)(2); *see also U.S. v. Day*, 524 F.3d 1361 (D.C. Cir. 2008) (holding that a district court was correct to exclude testimony that did not meet the Rule 16 standard).

III. ANALYSIS

A. **Rule 702 Challenges**

a. *Urey Patrick*

The government challenges Mr. Patrick's testimony as to four subjects: self-defense/use of force; the physiological realities of deadly force confrontation; memory inconsistencies; and

3

subjective perspective. The Court will deal with each of these in turn.

   i.   *Self-Defense/Use of Force*

The government asks this Court to prevent Mr. Patrick from speaking on the use of deadly force in self-defense cases. The government has three main arguments for disallowing this speech: that it will not help the jury determine the facts of the case; that it will involve the witness reciting legal standards of self-defense, which is prohibited; and that it will involve evidence as to defendants' state of mind, which is banned under Fed. R. Evid. 704(b). Mot. at 5-10.

The government claims that Mr. Patrick's testimony on self-defense would not aid the jury because the government already plans to introduce documents laying out the standards for use of deadly force that Blackwater provided to its employees. It seems a stretch, however, to say that the mere introduction of these documents will provide the proper context within which the jury will be able to evaluate any self-defense claims. The use of deadly force in self-defense is something that is often outside the ken of the ordinary juror. To simply point jurors to manuals detailing appropriate procedures and expect them to understand it well enough to make a determination of guilt or innocence strikes this Court as insufficient. Mr. Patrick's testimony would help provide jurors with the context of the use of self-defense in the Baghdad of September 2007.

Additionally, the government's claim that allowing Mr. Patrick to testify on self-defense would usurp this Court's role does not withstand closer scrutiny. Mr. Patrick intends to give testimony on general principles of self-defense and use of force, as well as to place them within the context of Iraq in 2007. There is no indication that he will be telling the jurors what standard they should be applying to this specific case. This is as it should be; as the government correctly

points out, providing legal standards is the Court's role. Mot. at 9. While this Circuit has not dealt specifically with the propriety of admitting a "use-of-force" expert, the Court agrees with the Ninth Circuit's decision allowing that type of testimony in *U.S. v. Koon*, 34 F.2d 1416, 1434 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996). Mr. Patrick will not offer a legal standard; instead, he will offer general principles of self-defense, which is very different. The advisory committee's note to Rule 702 echoes this—"it might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case." Fed. R. Evid. 702 advisory committee's note.

Finally, the government claims that Mr. Patrick's testimony will go to the defendants' state of mind, and is thus prohibited under Fed. R. Evid. 704(b). The rules are explicit that "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). But there is no indication that Mr. Patrick intends to testify as to the defendants' states of mind. Elucidating general principles of self-defense and opining on whether a given person's use of force was reasonable are simply not the same thing.

The Court will therefore allow Mr. Patrick's testimony on self-defense and the use of deadly force.

    *ii.*    *Physiological Realities of Deadly Force Confrontation*

The government seeks to prohibit Mr. Patrick from testifying to the physiological realities of deadly force confrontation because he does not have any expertise in a medical field. Mot. at 10. However, the government overstates its case in claiming that Mr. Patrick has no expertise whatsoever. It appears clear from his *curriculum vitae* that Mr. Patrick has experience dealing with the physiology of self-defense—indeed, it seems logically inconsistent for the

government to agree that Mr. Patrick is generally an expert on self-defense while at the same time claiming that he is not qualified to discuss a key part of it. The government scorns Mr. Patrick's authorship of *In Defense of Self & Others* as just "plug[ging] a book," but the fact that Mr. Patrick has written on self-defense before at book length suggests that he will know more than the average juror when it comes to these physiological realities. Gov't's Reply at 3.

The Court will therefore allow Mr. Patrick's testimony on the physiological realities of deadly force confrontation.

### iii. Memory Inconsistencies

The government challenges Mr. Patrick's testimony on memory inconsistencies that result from combat both because Mr. Patrick appears unqualified and because memory-focused expert testimony can be unreliable. Mot. at 10-12. Curiously, the defense chose not to respond to this particular objection. *See generally* Opp'n; *see also* Reply at 1-2 (pointing out that defendants did not respond to this portion of the motion). As the numerous cases that the government cites in its initial motion attest, courts have often cast a skeptical eye on memory testimony. Mot. at 11. However, courts have allowed expert testimony on memory-based issues in certain cases. *See e.g. Rock v. Arkansas*, 483 U.S. 44 (1987) (holding that expert testimony on repressed memories is not *per se* inadmissible).

In any event, the Court need not reach a decision on whether expert testimony on memory from a qualified expert would be admissible because Mr. Patrick is clearly not qualified to offer it. Mr. Patrick has no medical or scientific training in memory; his expertise is in self-defense and the use of deadly force. Though Mr. Patrick similarly lacked formal scientific training in the physiological realities of self-defense, the connection between expertise in self-defense and expertise in memory inconsistencies resulting from combat is far more tenuous than

the connection between expertise in self-defense and expertise in the physiological realities of self-defense. Given that courts—with good reason—usually cast a jaundiced eye on memory-focused testimony to begin with, the bar for qualification as an expert on memory issues must be higher. Mr. Patrick's lack of medical or scientific training in memory alone might not be enough to disqualify his testimony, but the Court cannot permit testimony on such an unreliable subject as memory from someone who has no other indicium of expertise.

Therefore, the Court will not allow Mr. Patrick to present any testimony on memory inconsistencies resulting from combat.

   iv.   *Subjective Perspective*

Finally, the government seeks to exclude Mr. Patrick's testimony on the subjective perspective of someone who uses deadly force in self-defense. The government's rationale for excluding this testimony is relatively similar to one of its reasons for excluding Mr. Patrick's testimony on self-defense—namely, that the proffered testimony will not help the jury decide the reasonableness of the defendant's actions. The answer to this objection is also similar to the answer to the objection about testimony on self-defense itself. Most jurors simply have never been in a situation where they had to make a decision on whether to use deadly force in defense of self. Undoubtedly, there are subjective factors that go into that calculation, and, just as undoubtedly, jurors may be unlikely to perceive those factors on their own. Mr. Patrick's testimony can remedy that deficiency.

Therefore, the Court will allow Mr. Patrick to present his testimony on the subjective perspective of an individual in a situation where self-defense may be required.

   b. *Col. David Bolgiano*

Many of the government's objections to Col. Bolgiano's testimony are fundamentally

similar to their objections to Mr. Patrick's testimony. In the interests of brevity, then, the Court will only deal specifically with the Rule 702 challenge that is unique to Col. Bolgiano, and will reject the government's challenges to Col. Bolgiano's general testimony about self-defense for the same reasons that it rejects the government's objections to Mr. Patrick's testimony. The appropriate use of self-defense, the rules of engagement, and the use of high numbers of rounds in self-defense are not matters of common knowledge, and the jury, as the fact-finder, should be made aware of them.

The government's other objection under Rule 702 is to Col. Bolgiano's testimony as to the "'threat level in Bag[h]dad.'" Mot. at 14. The government first claims that Col. Bolgiano would not have knowledge of the threat level in Baghdad, but as the defense makes clear in its opposition, Col. Bolgiano does in fact have that knowledge. Opp'n at 6-7. If the government feels that Col. Bolgiano has insufficient knowledge to testify to the threat level they can make that clear via cross-examination. The government also states that this Court should exclude Col. Bolgiano's evidence until it decides the Government's Motion to Exclude Threat Evidence That Is Irrelevant to Defendant's Self-Defense Claims, *Slough*, 08 Cr. 360, ECF No. 202 and 449. If the Court does decide that generic threat evidence is not relevant to the defendants' self-defense claims, then obviously Col. Bolgiano's testimony on that subject would not be admitted. As such, the Court will defer decision on whether Col. Bolgiano's testimony on the threat level in Baghdad should be admitted until it has decided whether generic threat evidence is admissible at all.

### B. Rule 16 Challenges

  *a. Urey Patrick, Col. David Bolgiano, William Conrad, Dr. Henry Lee*

Only once has the D.C. Circuit approved the exclusion of an expert due to inadequacy of

8

the Rule 16 disclosure. *See Day*, 524 F.3d 1261. In that case, the defense was far more recalcitrant with its disclosures; indeed, its expert only shared his diagnosis of the defendant's mental condition during a hearing on whether to exclude the evidence at issue. *Id.* at 1371. The government's complaints here are a far cry from the complaints made in *Day*, and this Court finds that the expert disclosures for Mr. Patrick, Col. Bolgiano, and Mr. Conrad are entirely adequate under Rule 16.

In each of these disclosures, defendants make clear that the opinions of Mr. Patrick, Col. Bolgiano, and Mr. Conrad will be based on their expertise in the field and their examination of discovery. *See* Mot., Ex. A at 2; Mot., Ex. B. at 3; Mot., Ex. C at 2. The First Circuit has held that this type of disclosure is an adequate basis for an expert's opinion. *See U.S. v. Lipscomb*, 539 F.3d 32, 38 (1st Cir. 2008) (holding that "inform[ing] defense counsel that [police officers] would be testifying on the basis of their 'training and experience'" was adequate under Rule 16). While it is unnecessary to go into exactly what these particular experts will testify to and what their qualifications are, suffice it to say that their opinions and the subjects of their testimony are clear beyond complaint and that their qualifications are manifest in their *curriculum vitae*.

The government also expresses its belief that the expert disclosure for Dr. Henry Lee is inadequate under Rule 16 because it does not provide the reasons for his opinions. *See* Mot. at 17. This disclosure appears to be completely acceptable. Dr. Lee will first describe the general procedures used to preserve a crime scene. He will then testify that the crime scene preservation procedures used in Nisur Square were inadequate to preserve the crime scene without contamination. *See* Mot., Ex. I at 2-3. These opinions will be based on Dr. Lee's expertise and experience in these areas, which is amply attested to by his *curriculum vitae*. *Id.* at 2. And the reasons for those opinions seem clear—Dr. Lee knows the proper procedures to take to preserve

9

a crime scene, and thinks that this crime scene was contaminated. Thus, proper procedures here were not followed. That the government must make an obvious inference does not render notice inadequate under Rule 16.

"[Rule 16] is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16, 1993 advisory committee's note. "[Rule 16] [is] not intended to create unreasonable procedural hurdles." *Id.* "Given that the defense had full notice of the *actual opinions* to which the [witnesses] intended to testify, [the Court is] unpersuaded by the defendant's criticism of the lack of detail regarding the bases for those opinions." *Lipscomb*, 539 F.3d at 38. Indeed, the logic of *Lipscomb* covers this case as well, though *Lipscomb* dealt not with defense disclosure of expert opinions, but with government disclosure. The government is fully aware of the topics on which Mr. Patrick, Col. Bolgiano, Mr. Conrad, and Dr. Lee will opine. They know that these opinions will be based on the witnesses' experiences and the proffered discovery. To require the defense to provide a detailed explanation of the full reasoning that led to every single expert opinion would create an unreasonable procedural hurdle. The government will not be surprised by this testimony, and should be able to test its merit through cross-examination.

*b. William Tobin, Dr. Frederick Schmidt, Don Mikko, Michael Haag, Dr. Michael Baden*

For all of these experts the defendants have admitted that they intend to supplement the disclosures they have already made with further information. *See* Opp'n at 10-12. In other words, the defendants have admitted that their disclosures are inadequate because they are incomplete. Rule 16 requires that the defendants give to the government "a written summary of *any* testimony that the defendants intends to use under [Rule 702]." Fed. R. Crim. P. 16(b)(1)(C)

10

(emphasis added). "Any testimony" certainly includes the testimony that defendants intend to proffer, and defendants have as much as admitted that their disclosures do not comply with Rule 16's requirements. While Rule 16 does not contain any specific timing requirements, it does deal with pretrial discovery. *See e.g.* Fed. R. Crim. P. 16, 1997 advisory committee's note ("[a]mendments in 1993 to Rule 16 included provisions for pretrial disclosure of information, including names and expected testimony of both defense and government expert witnesses"). "[I]t is expected that the parties will make their requests and disclosures [of expert testimony] in a timely fashion." Fed. R. Crim. P. 16, 1993 advisory committee's note. Trial in this matter is set to begin this week, and to this Court's knowledge defendants have not yet supplemented their incomplete disclosures. Given that Rule 16 specifically contemplates pretrial disclosures, this Court has no difficulty concluding that even if defendants supplemented their disclosures for these expert witnesses to bring them in line with Rule 16's content requirements, the disclosures would not be timely. Therefore the Court will grant the government's motion to exclude this testimony.

## IV. CONCLUSION

For the foregoing reasons, the government's motion [444] to preclude defendants' proffered expert testimony is GRANTED in part, DEFERRED in part, and DENIED in part. Urey Patrick's testimony on memory inconsistencies that can result from combat (*see* Mot., Ex. A at 2) will be excluded. The proffered expert testimony from William Tobin, Dr. Frederick Schmidt, Don Mikko, Michael Haag, and Dr. Michael Baden is also excluded. The Court will defer decision on whether to admit Col. David Bolgiano's testimony on the threat level in Baghdad (*see* Mot., Ex. B at 3) until it has decided the Government's Motion to Exclude Threat

11

Evidence That Is Irrelevant to Defendant's Self-Defense Claims [202, 449]. The government's motion to exclude is denied as to all other aspects of the expert testimony.

A separate Order consistent with this Memorandum Opinion shall issue this date.

6/16/14
Date

Royce C. Lamberth
ROYCE C. LAMBERTH
United States District Judge